Tomio B. Narita, (CA SBN 156576) *Pro Hac Vice*
R. Travis Campbell (CA SBN 271580) *Pro Hac Vice*
44 Montgomery Street, Suite 3010
San Francisco, CA 94104
(415) 283-1000 FAX: (415) 352-2625
tnarita@snllp.com
tcampbell@snllp.com

Gregory M. Constantino, (6853 UT)
Constantino Law Office, P.C.
8537 S. Redwood Road, Suite D
West Jordan, UT 84088
(801) 749-4747 or (801) 318-4747
FAX: (801) 748-4713
greg@constantinolaw.com

Attorneys for Defendant AUTOVEST, LLC

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Wayland Kathan,<br><br>             Plaintiff,<br><br>vs.<br><br>Autovest, LLC,<br><br>         Defendant | Case No: 2:19-cv-00486-TC<br><br>**MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br><br>Judge: Tena Campbell |

This motion is made on the grounds that a valid and enforceable agreement to arbitrate exists between the parties that fully encompasses the claims asserted in the Complaint. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, Plaintiff must be ordered to arbitrate his claims on an individual basis, as required by the agreement, and this action must be stayed pending the completion of arbitration.

## I.   <u>INTRODUCTION</u>

Plaintiff Wayland Kathan ("Kathan") entered into a retail installment contract to finance his purchase of a vehicle.  The contract contains a broad arbitration provision, whereby any claims asserted by Kathan that relate in any way to the purchase and financing of the vehicle, or any resulting transaction or relationship with third parties, must be resolved through binding, individual arbitration, upon the election of either party.

After Kathan defaulted, all rights under the contract were assigned to defendant Autovest, L.L.C. ("Autovest"), and it filed a state court lawsuit to collect the amounts Kathan owed under the contract.  Kathan admitted he entered into the contract and, shortly thereafter, the state court entered judgment in Autovest's favor.

In this action, Kathan asserts individual and putative class claims against Autovest under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and Utah law relating to the state lawsuit.  He claims Autovest was required to obtain a license before filing suit, and its failure to do so purportedly violated sections of the FDCPA and Utah law.

In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("*Concepcion*") and other recent decisions, the U.S. Supreme Court has emphatically reaffirmed the strong policy favoring enforcement of private agreements to arbitrate, like the one here, as reflected in the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA").  There is no dispute that Kathan entered into an agreement to arbitrate governed by the FAA.  He had the opportunity to opt out of the arbitration provision by providing timely notice, but failed to do so.  Kathan is bound by the arbitration provision and Autovest, as an assignee and covered third party, may and now does enforce it.

The Court need not reach the question of whether Kathan's claims are arbitrable, because the arbitration provision clearly and unmistakably delegates questions of arbitrability to the arbitrator.  If the Court were to reach the question, however, Kathan's claims are clearly covered

by the broad arbitration provision.  They are based entirely on alleged attempts to collect amounts he financed under the contract and his debtor-creditor relationship with Autovest.

Kathan must arbitrate his claims on an individual, non-class basis, pursuant to the arbitration provision.  The Court should grant this motion, order the parties to arbitrate, and stay this action pending completion of the arbitration proceedings.

## II.   STATEMENT OF FACTS

### A.   Kathan's Motor Vehicle Retail Installment Contract

On October 6, 2015 Kathan entered into a Motor Vehicle Retail Installment Contract ("Contract") to purchase a 2002 Chevrolet Astro.[1]  Kathan subsequently failed to make the monthly payments required by the Contract.[2]  On July 19, 2017, all right, title and interest in his Contract was sold to Autovest.[3]

On December 27, 2018, a lawsuit was filed by Utah counsel on behalf of Autovest and against Kathan in the Third Judicial District Court, Tooele Department, County Tooele to collect the unpaid balance owed under the Contract ("State Court Action").[4]  Kathan admitted that he entered into and was bound by the Contract.[5]  On March 22, 2019, the state court granted Autovest's motion for summary judgment and entered judgment against Kathan.[6]

### B.   The Binding Arbitration Provision In The Contract

The Contract included a binding arbitration provision ("Arbitration Provision"), which

---

[1]  Declaration of Don Griffin in Support of Motion to Compel Arbitration ("Griffin Decl.") at ¶ 5, Ex. 1.

[2]  *Id.* at ¶ 9.

[3]  *Id.*

[4]  *See* Request for Judicial Notice ("RJN"), Ex. A.

[5]  *Id.* at Ex. B at p. 2.

[6]  *Id.* at Exs. C & D.

Kathan signed when he purchased the vehicle.[7]  It states, in relevant part:

**This Arbitration Provision significantly affects your rights in any dispute with us.**

Please read this Arbitration Provision carefully before you sign below.

1.    **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT.**

2.    **IF A DISPUTE IS ARBITRATED, YOU AND WE WILL EACH GIVE UP OUR RIGHT TO A TRIAL BY THE COURT OR A JURY TRIAL.**

3.    **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US.**

4.    **THE INFORMATION YOU AND WE MAY OBTAIN IN DISCOVERY FROM EACH OTHER IN ARBITRATION IS GENERALLY MORE LIMITED THAN IN A LAWSUIT.**

5.    **OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the purchase and financing of your Vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not design this Contract) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action.  Any claim or dispute is to be arbitrated on an individual basis and not as a class action, and **you expressly waive any right you may have to arbitrate a class action (this is called the "Class Action Waiver").**
. . .

This Arbitration Provision relates to a contract that evidences a transaction involving interstate commerce.  Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act.[8]

---

[7]  Griffin Decl., Ex. 1 at p. 5.

[8]  *Id.* (bold and capitalization in original)

4

The Arbitration Provision also contained an opt out provision:

> ***You may opt out of your agreement to arbitrate disputes by notifying us in writing of your decision to do so and sending the notification to us at CarHop Opt Out, P.O. Box 398104, Edina MN 55439-8104 by certified mail within 15 days of the date you sign this Arbitration Provision.***[9]

Kathan acknowledged that he read the Arbitration Provision, including the opt-out provision, and understood its terms.[10]  He did not exercise his right to opt out.[11]

## III.  ARGUMENT

### A.  Kathan's Claims Are Subject to Binding Arbitration Pursuant To The Arbitration Provision He Agreed To When He Purchased The Vehicle

#### 1.  The FAA Mandates That This Court Compel Arbitration Of Claims Subject To A Binding Arbitration Agreement

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[12]  "Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."[13]  The FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.[14]  The Arbitration Provision is governed by the FAA.[15]

The Supreme Court recently reaffirmed that the FAA "establishes a liberal federal policy

---

[9]  *Id.*

[10]  *Id*. at ¶ 7 & Ex. 1 at p. 5.

[11]  *Id*. at ¶ 8.

[12]  9 U.S.C. § 2.

[13]  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

[14]  *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

[15]  *See* Griffin Decl., Ex. 1 at p. 5.

favoring arbitration agreements."[16]  Arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d].'"[17]  The Supreme Court has repeatedly confirmed that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[18]  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[19]

The "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes."[20]  Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties."[21]  Under the FAA, arbitration **must** be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement.[22]  An arbitration agreement governed by the FAA is presumed to be valid and enforceable.[23]

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of

---

[16]  *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1621 (2018) (quotations omitted).

[17]  *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987).

[18]  *Concepcion*, 563 U.S. at 344; *see also Volt Info. Scis., Inc. V. Board of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

[19]  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

[20]  *Concepcion*, 563 U.S. at 344 (internal citations omitted).

[21]  *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

[22]  *See, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Dean Witter Reynolds, Inc.*, 470 U.S. at 218; *see also Bradford v. Pilot Travel Centers, LLC*, 2018 WL 4082345, at *1 (D. Utah Aug. 27, 2018) (unpublished).

[23]  *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).

arbitrable issues should be resolved in favor of arbitration."[24]   The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue.[25]   For contracts with an arbitration clause, there is a presumption of arbitrability.[26]

## 2.      The Arbitration Provision Is Valid And Enforceable

Kathan indisputably entered into the Contract, which contains the Arbitration Provision.[27] He signed the Arbitration Provision and did not opt out.[28]   He is unquestionably bound by the terms of the Arbitration Provision.

Though the FAA exclusively governs the enforceability of the arbitration agreements according to their terms, state law governs the determination of whether a valid agreement to arbitrate exists.[29]   Under Utah law, "a party is bound by the contract which he or she voluntarily and knowingly signs."[30]   Because Kathan voluntarily signed the Contract and the Arbitration Provision, he is bound by both.[31]

All rights, title, and interest under the Contract were assigned to Autovest.[32]   Autovest, as

---

[24]  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *THI of New Mexico at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1165 (10th Cir. 2014).

[25]  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

[26]  *AT&T Tech., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986); *Local 5-857 Paper, Allied-Industrial, Chemical and Energy Workers Intern. Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003).

[27] Griffin Decl., ¶ 5 at Ex. 1; RJN at Exs. A & B.

[28] Griffin Decl., ¶¶ 5, 7-8 at Ex. 1, p. 5.

[29]  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

[30]  *John Call Engineering, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987).

[31] Kathan admitted in the State Court Action that he is bound by the Contract.  *See* RJN, Ex. B at p. 2 (stating he is "in agreeance [*sic*] with paying the remainder after it is resold . . . .").

[32]  Griffin Decl. at ¶ 9, Ex. 2; Declaration of Kimberlee Basha in Support of Defendant's Motion to Compel Arbitration at ¶¶ 4-6, Exs. A-C.  The Contract expressly provided that all

the assignee and successor in interest, may enforce the Arbitration Provision.[33]  Autovest may also enforce the Arbitration Provision as a "third party" that has a creditor-debtor "relationship" with Kathan related to his "purchase and financing" of the vehicle.

The Supreme Court has explained that the FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'"[34]  Consistent with this, Autovest may enforce the Arbitration Provision.

### 3.   The Claims Asserted By Kathan Fall Squarely Within The Scope Of The Arbitration Provision

Ordinarily, the Court next determines whether Kathan's claims fall within the scope of the Arbitration Provision, *i.e.*, whether the claims are arbitrable.  But the Court need not address this question here, because the Arbitration Provision "clearly and unmistakably" leave questions of arbitrability to the arbitrator.

"The question [of] whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise."[35]  Thus, "if a court finds evidence of clear and unmistakable intent to arbitrate arbitrability, it **must** allow an arbitrator to decide issues of

---

rights under the Contract could be assigned.  Griffin Decl., Ex. 1 at p. 4 (paragraph titled "Assignment").

[33]   *See Sunridge Development Corp. v. RB & G Engineering, Inc.*, 230 P.3d 1000, 1004 (Utah 2010) (under Utah law, "the assignee stands in the shoes of its assignor.").  Moreover, the Contract expressly states that "'[w]e', 'us' and 'our'" also "refer to . . . any subsequent assignee of this Contract."  Griffin Decl., Ex. 1 at p. 2 (paragraph titled "Identification of Parties and Contract").

[34]   *Epic Systems Corp.*, 138 S. Ct. at 1621 (citations omitted, emphasis in original).

[35]   *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018)  (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

arbitrability in the first instance."[36]

The Arbitration Provision clearly and unmistakably delegates questions of arbitrability to the arbitrator. The agreement encompasses "[a]ny claim, dispute, whether in contract, tort or otherwise (**including the interpretation and scope of this clause and the arbitrability of any issue** . . . ."[37] This language "clearly and unmistakably" demonstrate an intent to arbitrate arbitrability. Thus, whether Kathan's claims are arbitrable must be left to the arbitrator.[38]

But if the Court does reach the question, Kathan's claims indisputably fall squarely within the scope of the Arbitration Provision. An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[39] Additionally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[40]

Where the clause is broad, as here, there is a heightened presumption of arbitrability such that "[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[41] As the party resisting arbitration, Kathan must show the Arbitration Provision does not encompass his claims.[42] He cannot meet his burden.

The Arbitration Provision is extremely broad[43] covering "[a]ny claim or dispute, whether

---

[36] *Belnap v. Iasis Healthcare,* 844 F.3d 1272, 1292 (10th Cir. 2017) (emphasis added).

[37] Griffin Decl., Ex. 1 at p. 5 (emphasis added).

[38] *See Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S. Ct. 524, 529 (2019).

[39] *AT&T Tech.,* 475 U.S. at 650.

[40] *Moses H. Cone,* 460 U.S. at 24-25.

[41] *AT&T Tech.,* 475 U.S. at 650.

[42] *See Green Tree Fin. Corp.-Ala.,* 531 U.S. at 92.

[43] *See Newmont U.S.A. Ltd. v. Insurance Co. of North America,* 615 F.3d 1268, 1275 (10th Cir. 2010) (finding phrase "arising out of" to be "broad," which gives rise to "a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim

in contract, tort or otherwise . . . which arises out of or relates in any manner to the purchase and financing of your Vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Contract)."[44]  The claims asserted by Kathan arise out of and relate to the purchase and finance of his vehicle; namely, attempts to collect the amounts he borrowed and failed to pay back.[45]  The Contract also expressly permits Autovest (a third party) to enforce the Arbitration Provision due to the relationship created (*e.g.* creditor-debtor) by the assignment of the Contract and the prosecution of the State Court Action.[46]  There is no question the Arbitration Provision covers the claims asserted by Kathan here.[47]

## B.    Kathan Must Arbitrate His Claims On An Individual (Non-Class) Basis And This Action Must Be Stayed

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed with arbitration on issues to which an arbitration agreement has been signed."[48]  The Supreme Court mandates that arbitration agreements governed by the FAA, like this one, must be enforced as written.[49]

---

alleged implicates issues of contract construction or the parties' rights and obligations under it."); *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000) ("all disputes or controversies arising under or in connection with this Agreement ... will be settled exclusively by arbitration" was broad; "[w]hen a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated.").

[44] Griffin Decl., Ex. 1 at p. 5.

[45] *See* Complaint at ¶¶ 12-53.

[46] Griffin Decl., Ex. 1 at p. 5.

[47] *See P&P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) ("If the allegations underlying the claims touch matters covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them.") (internal quotations and brackets omitted).

[48] *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (citations omitted; emphasis in original).

[49] *Id.* at 21 (the FAA "requires courts to enforce the bargain of the parties to arbitrate"); *Concepcion*, 563 U.S. at 344 (the "'principal purpose' of the FAA is to 'ensur[e] that private

Here, Kathan agreed that disputes between the parties will be subject to individual arbitration.[50]  Specifically, "[a]ny claim or dispute is to be arbitrated on an individual basis and not as a class action, and you expressly **waive any right you may have to arbitrate a class action (this is called the 'Class Action Waiver')**."[51]  The "FAA requires courts to honor parties' expectations."[52]  Accordingly, Kathan must arbitrate his claims on an individual basis.

Section 3 of the FAA provides that the "court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[53]  Accordingly, Autovest request that the Court stay this action pending the completion of arbitration.

## IV.   CONCLUSION

For the forgoing reasons, the Court should grant this motion and issue an order compelling Kathan to arbitrate his claims on an individual basis.  This action should be stayed pending the completion of arbitration proceedings.

DATED: August 1, 2019                    SIMMONDS & NARITA LLP

By:  s/ R. Travis Campbell
R. Travis Campbell, *Pro Hac Vice*
Attorneys for Defendant

---

arbitration agreements are enforced according to their terms.'").

  [50]  *See* Griffin Decl., Ex. 1 at p. 5.

  [51]  *Id.* (emphasis in original); *see also id.* ("**IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US.**") (emphasis in original).

  [52]  *Concepcion*, 563 U.S. at 351; *Stolt-Nielsen*, 556 U.S. at 687.

  [53]  9 U.S.C. § 3 (emphasis added); *see Belnap,* 844 F.3d at 1288 ("if a court concludes that parties agreed to arbitrate an issue, the court must stay litigation in favor of arbitration.").